IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| UNITED STATES OF AMERICA | **I N D I C T M E N T** |
|---|---|
| v. | Case No. _____ |
| ROMEL RAMBUS, a/k/a BAGBOY MELL; | Violations:  18 U.S.C. §§ 981(a)(1)(C), |
| DEVONSHA DABNEY, a/k/a KEMELL, | 982(a)(1), and 1956(h); 21 U.S.C. §§ 841(a)(1), |
| a/k/a MELLYVSMEL, a/k/a RELL; | 841(b)(1)(C), 846, 848(a), 848(c), 853, |
| KEMANI DABNEY, a/k/a | 856(a)(1), and 856(b); 28 U.S.C. § 2461; and |
| KDD.EASTSIDE; | 18 U.S.C. § 2 |
| KESHAWN DABNEY, a/k/a BJ; | |
| DIMOND HENDERSON, a/k/a DMAN; | |
| GARY DEWAYNE WELLS, a/k/a G; | |
| JONATHAN WALKER, a/k/a J; | |
| CASSANDRA FULFORD, a/k/a HONEY; | |
| ERVIN SAMPSON, a/k/a MIKE; | |
| BRANDON SAMPSON; | |
| JAMALE WHITE, a/k/a MELLY, a/k/a | |
| 5674MEL; | |
| DEEANGELO TYRONE WHITE JR., a/k/a | |
| RELLY DEE, a/k/a DELO, a/k/a DELO | |
| BAXK; | |
| OSAGYEFO NKRUMAH NAGBE, a/k/a | |
| 5656DJ; | |
| DEQUAN WELLS, a/k/a DWIGHT; | |
| ALONTE PATTERSON, a/k/a TAE; | |
| JALEN JOHNSON, a/k/a PAPE YOUNG; | |
| JORDAN D. HIGGINS, a/k/a JOJO; | |
| ANTWON PAIGE; | |
| KYLE ALEXANDER CULVER; | |
| SIERRA DAVIS; | |
| JALEN HESTER, a/k/a DREAM; | |
| HOPE VICTORIA WELTON; | |
| SIDRICK JAMES TOOTOSIE BAKER; | |
| BASIL HUNTS ALONG; | |
| KRISTIN JOHNSON; | |
| ETHAN YOUNGBIRD; | |
| WESTON BAKER; | |
| DENNISON JAY NEZ JR., a/k/a DJ; | |
| KENSEY TIKANYE, a/k/a KENSEY STIFF | |
| ARM, a/k/a KENSEY WOODS; and | |
| DEANNA ROULETTE | |

## INTRODUCTION

1.      Beginning in or about 2015, REUBEN RAMBUS, a/k/a RENBEN RAMBUS, and others, were involved in drug trafficking in North Dakota, Michigan, and elsewhere.  REUBEN RAMBUS, a/k/a RENBEN RAMBUS, DEANTE RAMBUS, ROMEL RAMBUS, a/k/a BAGBOY MELL, and other associates were transporting oxycodone pills from Michigan to North Dakota for those pills to be distributed in Bismarck and the Fort Berthold Indian Reservation.  On or about October 2, 2016, REUBEN RAMBUS, a/k/a RENBEN, was shot and killed in Detroit, Michigan.  In honor of REUBEN RAMBUS, a/k/a RENBEN, his brother, ROMEL RAMBUS, a/k/a BAGBOY MELL, established and began to organize a criminal street gang named the REUB Gang.  The group was initially named REUB Gang, also known as "74," for REUBEN RAMBUS, a/k/a RENBEN.  REUB Gang is a spinoff of the 220 Maxout gang.  Maxout split into two factions after an altercation at a dice game which resulted in the killing of Jeff Staples by Rico Rambus. These groups were known as "Jeff Mobb/Gang," also known as "56," and "Rell Gang."  Jeff Mobb/Gang and Rell Gang have come back together into REUB Gang since the death of REUBEN RAMBUS, a/k/a RENBEN. "5674" pertains to the current allegiance between the REUB Gang and the Jeff Mobb/Gang, another street gang from Detroit. The numbers in the name are based on the number pad of a telephone. "5" stands for the "J" and "6" stands for the "M" in Jeff Mobb. "7" stands for the "R" and "4" stands for the "G" in REUB Gang.  REUB Gang members commonly utilize a variety of unifying marks and identifiers, including "gang signs," clothing, and tattoos specific to the gang. Specifically, members and associates

2

wear articles of blue clothing, and utilize the numbers "5674" to symbolize their gang affiliation. The 5674 tag can only be used by members of the gang; those outside of the gang who use the tag risk violence. The purpose of the criminal street gang was to make money for ROMEL RAMBUS, a/k/a BAGBOY MELL, and other members of the gang through drug trafficking and other illegal acts.

2. ROMEL RAMBUS, a/k/a BAGBOY MELL, and others, recruited juveniles and adults residing in the Detroit, Michigan, metro area to become members and associates of the criminal street gang. To date, the investigation has revealed that at least 50 members and/or associates of this gang are currently operating throughout Detroit. The gang also has a presence in other states, including North Dakota, West Virginia, and Kentucky, and utilizes interstate communications facilities to conduct gang business. Members and associates of the criminal street gang would participate in transporting and distributing controlled substances in North Dakota, Michigan, and elsewhere. Controlled substances were transported to North Dakota, and elsewhere, from Michigan several times a month. The primary controlled substances involved were opiate pills, namely, oxycodone 30 mg pills and fentanyl pills pressed to look like oxycodone 30 mg pills. Women were utilized by the organization as "stuffers" to transport controlled substances in their vaginal cavities. "Field workers" were utilized to reside in homes on reservations in North Dakota to sell controlled substances to locals. Proceeds of drug trafficking were collected and returned to Michigan by automobile or train. Connections were made with local addicts whose homes were used by field workers to distribute controlled substances

3

and/or who would bring customers directly to the field workers for controlled substance sales.

3.      ROMEL RAMBUS, a/k/a BAGBOY MELL, established and enforced rules that governed the recruitment, initiation, and activities of the gang members and associates.  Those rules included, among other things, that:  (a) recruits were initiated into the gang by physical or sexual assault; (b) members and associates were required to perform acts, including drug distribution, as directed by ROMEL RAMBUS, a/k/a BAGBOY MEL; and (c) members and associates were required to recruit other persons into the gang as directed by ROMEL RAMBUS, a/k/a BAGBOY MEL.

4.      As part of the establishment, operation, and maintenance of the criminal street gang, ROMEL RAMBUS, a/k/a BAGBOY MELL, and others, known and unknown to the grand jury, engaged in criminal activity as set forth below.

<u>COUNT ONE</u>

**Conspiracy to Distribute and Possess with Intent to Distribute
Controlled Substances**

The Grand Jury Charges:

From in or about 2016 and continuing through the date of this Indictment, in the

District of North Dakota, the Eastern District of Michigan, and elsewhere,

ROMEL RAMBUS, a/k/a BAGBOY MELL;
DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL;
KEMANI DABNEY, a/k/a KDD.EASTSIDE;
KESHAWN DABNEY, a/k/a BJ;
DIMOND HENDERSON, a/k/a DMAN;
GARY DEWAYNE WELLS, a/k/a G;
JONATHAN WALKER, a/k/a J;
CASSANDRA FULFORD, a/k/a HONEY;
ERVIN SAMPSON, a/k/a MIKE;
BRANDON SAMPSON;
JAMALE WHITE, a/k/a MELLY, a/k/a 5674MEL;
DEEANGELO TYRONE WHITE JR., a/k/a RELLY DEE, a/k/a DELO,
a/k/a DELO BAXK;
OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ;
DEQUAN WELLS, a/k/a DWIGHT;
ALONTE PATTERSON, a/k/a TAE;
JALEN JOHNSON, a/k/a PAPE YOUNG;
JORDAN D. HIGGINS, a/k/a JOJO;
ANTWON PAIGE;
KYLE ALEXANDER CULVER;
SIERRA DAVIS;
JALEN HESTER, a/k/a DREAM;
HOPE VICTORIA WELTON;
SIDRICK JAMES TOOTOSIE BAKER;
BASIL HUNTS ALONG;
KRISTIN JOHNSON;
ETHAN YOUNGBIRD;
WESTON BAKER;
DENNISON JAY NEZ JR., a/k/a DJ;
KENSEY TIKANYE, a/k/a KENSEY STIFF ARM, a/k/a KENSEY WOODS; and
DEANNA ROULETTE

5

knowingly and intentionally combined, conspired, confederated, and agreed together and with others, both known and unknown to the grand jury, to distribute and possess with intent to distribute a controlled substance, namely: (i) a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance; and (ii) a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

<u>Drug Quantity</u>

With respect to ROMEL RAMBUS, a/k/a BAGBOY MELL; DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL; DIMOND HENDERSON, a/k/a DMAN; GARY DEWAYNE WELLS, a/k/a G; JONATHAN WALKER, a/k/a J; ERVIN SAMPSON, a/k/a MIKE; JAMALE WHITE, a/k/a MELLY, a/k/a 5674MEL; DEEANGELO TYRONE WHITE JR., a/k/a RELLY DEE, a/k/a DELO, a/k/a DELO BAXK; and OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ, the amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide") involved in the conspiracy attributable to each of these individuals as a result of that individual's own conduct, and the conduct of other conspirators reasonably foreseeable to that individual, is 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide"), in violation of Title 21, United States Code, Section 841(b)(1)(A).

6

With respect to DEQUAN WELLS, a/k/a DWIGHT; KEMANI DABNEY, a/k/a KDD.EASTSIDE; KESHAWN DABNEY, a/k/a BJ, a/k/a LIL B; BRANDON SAMPSON; CASSANDRA FULFORD, a/k/a HONEY; ALONTE PATTERSON, a/k/a TAE; JALEN JOHNSON, a/k/a PAPE YOUNG; JORDAN D. HIGGINS, a/k/a JOJO; ANTWON PAIGE; KYLE ALEXANDER CULVER; SIERRA DAVIS; JALEN HESTER, a/k/a DREAM; HOPE VICTORIA WELTON; and BASIL HUNTS ALONG, the amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide") involved in the conspiracy attributable to each of these individuals as a result of that individual's own conduct, and the conduct of other conspirators reasonably foreseeable to that individual, is 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide"), in violation of Title 21, United States Code, Section 841(b)(1)(B).

<u>Overt Acts</u>

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1.      It was a part of said conspiracy that the defendants and others would and did distribute and possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone and fentanyl in or near the Turtle Mountain Indian Reservation, the Spirit Lake Indian Reservation, and the Fort Berthold Indian Reservation; Minot, North Dakota; Bismarck, North Dakota; and elsewhere, including but not limited to the following:

(a) On or about March 13, 2019, ERVIN SAMPSON, a/k/a MIKE, individually, and by aiding and abetting, distributed a controlled substance, namely, approximately four pills containing a detectable amount of oxycodone, in or near the Fort Berthold Indian Reservation, North Dakota;

(b) On or about March 13, 2019, ERVIN SAMPSON, a/k/a MIKE, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, approximately 150 pills containing a detectable amount of oxycodone, in or near the Fort Berthold Indian Reservation, North Dakota;

(c) On or about March 9, 2020, JALEN JOHNSON, a/k/A PAPE YOUNG, and a juvenile male, J.W., individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, approximately 50 pills containing a detectable amount of oxycodone, in or near the Fort Berthold Indian Reservation, North Dakota;

(d) In or about September 2020, DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL; KESHAWN DABNEY, a/k/a BJ; DIMOND HENDERSON, a/k/a DMAN; and OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, opiate pills containing a detectable amount of oxycodone and fentanyl, in or near Minot, North Dakota;

8

(e) On or about December 21, 2020, DEQUAN WELLS, a/k/a DWIGHT, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, approximately 187 opiate pills containing a detectable amount of oxycodone and fentanyl, in or near Parshall, North Dakota;

(f) On or about January 7, 2021, JONATHAN WALKER, a/k/a J, individually, and by aiding and abetting, distributed a controlled substance, namely, opiate pills containing a detectable amount of oxycodone and fentanyl, in or near Bismarck, North Dakota;

(g) On or about January 25, 2021, JONATHAN WALKER, a/k/a J, individually, and by aiding and abetting, distributed a controlled substance, namely, opiate pills containing a detectable amount of oxycodone and fentanyl, in or near Bismarck, North Dakota;

(h) On or about January 26, 2021, JONATHAN WALKER, a/k/a J, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, opiate pills containing a detectable amount of oxycodone and fentanyl, in or near Bismarck, North Dakota;

(i) On or about February 4, 2021, OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, opiate pills

9

containing a detectable amount of oxycodone and fentanyl, in or near

Bismarck, North Dakota;

2.     It was further a part of said conspiracy that certain conspirators sought and

located users of oxycodone and fentanyl to purchase controlled substances from other

conspirators;

3.     It was further a part of said conspiracy that certain conspirators sought and

located sub-distributors of oxycodone and fentanyl for other conspirators;

4.     It was further a part of said conspiracy that one or more conspirators

possessed firearms to protect their supply of controlled substances, and to intimidate

other persons in North Dakota, Michigan, and elsewhere;

5.     It was further a part of said conspiracy that one or more conspirators

threatened harm, threatened violence, and used intimidation to protect and continue their

criminal activities in North Dakota, Michigan, and elsewhere, including but not limited to

the following:

> (a) In or about July 2020, DEVONSHA DABNEY, a/k/a KEMELL, a/k/a
>
> MELLYVSMEL, a/k/a RELL, discharged a firearm at a vehicle
>
> occupied by A.H. in or near Detroit, Michigan;
>
> (b) In or about August 2020, DEVONSHA DABNEY, a/k/a KEMELL,
>
> a/k/a MELLYVSMEL, a/k/a RELL, threatened harm and intimidated
>
> one or more family members of M.B. in or near Detroit, Michigan;

6.     It was further a part of said conspiracy that one or more conspirators

received money wire transfers that were proceeds of oxycodone and fentanyl sales;

7.      It was further a part of said conspiracy that one or more conspirators sent money wire transfers that were proceeds of oxycodone and fentanyl sales;

8.      It was further a part of said conspiracy that one or more conspirators traveled between the states of Michigan and North Dakota, and elsewhere, to obtain, transport, and distribute opiate pills and powders containing oxycodone and fentanyl;

9.      It was further a part of said conspiracy that one or more of the defendants traveled between Michigan and North Dakota via bus, automobile (including rental vehicles), airplane, and other means of transportation for purposes of obtaining and distributing controlled substances, and collecting and distributing proceeds of drug distribution activity;

10.      It was further a part of said conspiracy that one or more conspirators rented and occupied apartments, trailer homes, houses, and hotel rooms in North Dakota, Michigan, and elsewhere, from which to store, possess, and distribute oxycodone and fentanyl;

11.      It was further a part of said conspiracy that conspirators utilized residences in Minot, North Dakota, Turtle Mountain Indian Reservation, Spirit Lake Indian Reservation, and Fort Berthold Indian Reservation to store, conceal, and distribute controlled substances, and to store and conceal the proceeds of drug trafficking conduct;

12.      It was further a part of said conspiracy that one or more conspirators collected money from other persons to purchase pills containing oxycodone and fentanyl;

13.      It was further a part of said conspiracy that one or more conspirators would and did attempt to conceal their activities;

11

14.     It was further a part of said conspiracy that one or more conspirators would and did use United States currency in their drug transactions;

15.     It was further a part of said conspiracy that one or more conspirators would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of oxycodone and fentanyl;

16.     It was further a part of said conspiracy that one or more conspirators would and did use social media websites, including YouTube, Instagram, and Facebook, to facilitate the distribution of oxycodone and fentanyl;

In violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

## COUNT TWO

### Continuing Criminal Enterprise

The Grand Jury Further Charges:

From in or about 2016 to the present, in the District of North Dakota, and elsewhere,

ROMEL RAMBUS, a/k/a BAGBOY MELL,

did knowingly and intentionally engage in a Continuing Criminal Enterprise, in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846 including, but not limited to, the violation alleged in Count One of this Indictment. This count is incorporated herein by reference. The above-described violations were, and are, part of a continuing series of violations.

These continuing series of violations were undertaken by ROMEL RAMBUS, a/k/a BAGBOY MELL, in concert with at least five other persons with respect to whom ROMEL RAMBUS, a/k/a BAGBOY MELL, occupied a position of organizer, supervisor, and manager including, but not limited to, the following individuals: (1) DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL; (2) KEMANI DABNEY, a/k/a KDD.EASTSIDE; (3) KESHAWN DABNEY, a/k/a BJ; (4) DIMOND HENDERSON, a/k/a DMAN; (5) JAMALE WHITE, a/k/a MELLY, a/k/a 5674MEL; (6) DEEANGELO TYRONE WHITE JR., a/k/a RELLY DEE, a/k/a DELO, a/k/a DELO BAXK; (7) GARY DEWAYNE WELLS, a/k/a G; (8) JONATHAN WALKER, a/k/a J; (9) UNINDICTED CO-CONSPIRATOR D.F.; and (10) UNINDICTED CO-CONSPIRATOR # 1 (M.B.);

13

From this continuing series of violations, ROMEL RAMBUS, a/k/a BAGBOY MELL, obtained substantial income;

In violation of Title 21, United States Code, Sections 848(a) and 848(c).

14

## COUNT THREE

### Continuing Criminal Enterprise

The Grand Jury Further Charges:

From in or about 2016 to the present, in the District of North Dakota, and elsewhere,

DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL, did knowingly and intentionally engage in a Continuing Criminal Enterprise, in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846 including, but not limited to, the violation alleged in Count One of this Indictment. This count is incorporated herein by reference. The above-described violations were, and are, part of a continuing series of violations.

These continuing series of violations were undertaken by DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL, in concert with at least five other persons with respect to whom DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL, occupied a position of organizer, supervisor, and manager including, but not limited to, the following individuals:  (1) KEMANI DABNEY, a/k/a KDD.EASTSIDE; (2) KESHAWN DABNEY, a/k/a BJ; (3) DIMOND HENDERSON, a/k/a DMAN; (4) JONATHAN WALKER, a/k/a J; (5) DEEANGELO TYRONE WHITE JR., a/k/a RELLY DEE, a/k/a DELO, a/k/a DELO BAXK; (6) OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ; (7) ERVIN SAMPSON; (8) BRANDON SAMPSON; (9) DEQUAN WELLS, a/k/a DWIGHT; (10) JALEN JOHNSON; (11) JORDAN D. HIGGINS, a/k/a JOJO; (12) BASIL HUNTS ALONG; (13) KENSEY TIKANYE A/K/A

KENSEY STIFF ARM A/K/A KENSEY WOODS; (14) KALEN FOX (indicted in

United States District Court Case No. 1:20-cr-071 (D.ND)); (15) DENNISON JAY NEZ

JR., a/k/a DJ; (16) DEANNA ROULETTE; (17) UNINDICTED CO-CONSPIRATOR

E.L.; and (18) UNINDICTED CO-CONSPIRATOR # 1 (M.B.);

 From this continuing series of violations, DEVONSHA DABNEY, a/k/a

KEMELL, a/k/a MELLYVSMEL, a/k/a RELL, obtained substantial income;

 In violation of Title 21, United States Code, Sections 848(a) and 848(c).

COUNT FOUR

**Continuing Criminal Enterprise**

The Grand Jury Further Charges:

From in or about 2016 to the present, in the District of North Dakota, and elsewhere,

DIMOND HENDERSON, a/k/a DMAN,

did knowingly and intentionally engage in a Continuing Criminal Enterprise, in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846 including, but not limited to, the violation alleged in Count One of this Indictment.  This count is incorporated herein by reference.  The above-described violations were, and are, part of a continuing series of violations.

These continuing series of violations were undertaken by DIMOND HENDERSON, a/k/a DMAN, in concert with at least five other persons with respect to whom DIMOND HENDERSON, a/k/a DMAN, occupied a position of organizer, supervisor, and manager including, but not limited to, the following individuals:  (1) KESHAWN DABNEY; (2) JALEN ARNOLD; (3) KYLE CULVER; (4) ANTWON PAIGE; (5) BASIL HUNTS ALONG; (6) KENSEY TIKANYE A/K/A KENSEY STIFF ARM A/K/A KENSEY WOODS; and (7) GRACE RODRIGUEZ;

From this continuing series of violations, DIMOND HENDERSON, a/k/a DMAN, obtained substantial income;

In violation of Title 21, United States Code, Sections 848(a) and 848(c).

## COUNT FIVE

**Money Laundering Conspiracy**

The Grand Jury Further Charges:

From in or about 2016 and continuing through the date of this Indictment, in the District of North Dakota, and elsewhere,

ROMEL RAMBUS, a/k/a BAGBOY MELL; and
DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL,

did knowingly combine, conspire, and agree with one or more persons, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956(h), to wit: to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, knowingly and intentionally distributing controlled substances: (a) with intent to promote the carrying on of the specified unlawful activity; and (b) knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i);

## MANNER AND MEANS

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

1.      ROMEL RAMBUS, a/k/a BAGBOY MELL; DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL, and co-conspirators, acquired opiate

pills containing oxycodone and fentanyl, both Schedule II controlled substances, outside of the District of North Dakota for distribution. The opiate pills were thereafter transported through, and distributed in, the District of North Dakota, and elsewhere, during the time frame of the conspiracy;

2.      Members of the controlled substance distribution conspiracy organization would sell opiate pills containing oxycodone and fentanyl, and currency would be collected and transferred from one person to another to continue the ongoing illegal activity; and

3.      During the course of this conspiracy, persons both known and unknown to the Grand Jury, utilized casinos and money services, such as Greektown Casino in Detroit, Michigan, Western Union, Walmart-to-Walmart (RIA Financial), and CashApp money services, to wire and transfer proceeds of the illegal drug sales from North Dakota to Michigan, and elsewhere, with intent to disguise and conceal the nature, the location, the source, the ownership, and the control of the proceeds of the drug trafficking activity, and to promote and continue the distribution activity;

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT SIX

### Maintaining a Drug-Involved Premises

The Grand Jury Further Charges:

Beginning in or about 2018 and continuing until in or about 2020, in the District of North Dakota, and elsewhere,

DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL;
and KEMANI DABNEY, a/k/a KDD.EASTSIDE,

individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL; and KEMANI DABNEY, a/k/a KDD.EASTSIDE, opened, used, and maintained one or more trailer houses in or near Minot, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing oxycodone and fentanyl, both Schedule II controlled substances, and other controlled substances;

In violation of Title 21, United States Code, Sections 856(a)(1) and 856(b), and Title 18, United States Code, Section 2.

## COUNT SEVEN

### Maintaining a Drug-Involved Premises

The Grand Jury Further Charges:

Beginning in or about September 2020 and continuing through the date of this Indictment, in the District of North Dakota, and elsewhere,

ERVIN SAMPSON, a/k/a MIKE,

individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, ERVIN SAMPSON, a/k/a MIKE, opened, used, and maintained one or more apartments in or near Minot, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing oxycodone and fentanyl, both Schedule II controlled substances, and other controlled substances;

In violation of Title 21, United States Code, Sections 856(a)(1) and 856(b), and Title 18, United States Code, Section 2.

## COUNT EIGHT

### Maintaining a Drug-Involved Premises

The Grand Jury Further Charges:

Beginning in or about September 2020, in the District of North Dakota, and elsewhere,

### BRANDON SAMPSON,

individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, BRANDON SAMPSON, opened, used, and maintained one or more apartments in or near Minot, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing oxycodone and fentanyl, both Schedule II controlled substances, and other controlled substances;

In violation of Title 21, United States Code, Sections 856(a)(1) and 856(b), and Title 18, United States Code, Section 2.

<u>COUNT NINE</u>

**Distribution of a Controlled Substance**
**(Oxycodone mixture)**

The Grand Jury Further Charges:

On or about March 13, 2019, in the District of North Dakota, and elsewhere,

ERVIN SAMPSON, a/k/a MIKE,

individually, and by aiding and abetting, knowingly and intentionally distributed a

controlled substance, namely, approximately four pills that were a mixture and substance

containing a detectable amount of oxycodone, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),

and Title 18, United States Code, Section 2.

## COUNT TEN

**Distribution of Controlled Substances**
**(Fentanyl mixture)**

The Grand Jury Further Charges:

On or about December 19 – 20, 2020, in the District of North Dakota, and elsewhere,

DEQUAN WELLS, a/k/a DWIGHT,

individually, and by aiding and abetting, knowingly and intentionally distributed a controlled substance, namely, approximately two pills that were a mixture and substance containing a detectable amount of oxycodone and fentanyl, Schedule II controlled substances;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT ELEVEN

### Possession with Intent to Distribute Controlled Substances
### (Fentanyl mixture)

The Grand Jury Further Charges:

On or about December 21, 2020, in the District of North Dakota, and elsewhere,

DEQUAN WELLS, a/k/a DWIGHT,

individually, and by aiding and abetting, knowingly and intentionally distributed a

controlled substance, namely, approximately 187 pills that were a mixture and substance

containing a detectable amount of oxycodone and fentanyl, Schedule II controlled

substances;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),

and Title 18, United States Code, Section 2.

## COUNT TWELVE

**Distribution of a Controlled Substance**
**(Fentanyl mixture)**

The Grand Jury Further Charges:

On or about January 7, 2021, in the District of North Dakota, and elsewhere,

JONATHAN WALKER, a/k/a J,

individually, and by aiding and abetting, knowingly and intentionally distributed a

controlled substance, namely, approximately 10 pills that were a mixture and substance

containing a detectable amount of fentanyl, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),

and Title 18, United States Code, Section 2.

26

<u>COUNT THIRTEEN</u>

**Distribution of a Controlled Substance**
**(Fentanyl mixture)**

The Grand Jury Further Charges:

On or about January 25, 2021, in the District of North Dakota, and elsewhere,

JONATHAN WALKER, a/k/a J,

individually, and by aiding and abetting, knowingly and intentionally distributed a

controlled substance, namely, approximately 12 pills that were a mixture and substance

containing a detectable amount of fentanyl, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),

and Title 18, United States Code, Section 2.

## COUNT FOURTEEN

**Possession with Intent to Distribute a Controlled Substance**
**(Fentanyl mixture)**

The Grand Jury Further Charges:

On or about January 26, 2021, in the District of North Dakota, and elsewhere,

JONATHAN WALKER, a/k/a J,

individually, and by aiding and abetting, knowingly and intentionally possessed with intent to distribute a controlled substance, namely, approximately 230 pills that were a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## COUNT FIFTEEN

**Possession with Intent to Distribute a Controlled Substance**
**(Fentanyl mixture)**

The Grand Jury Further Charges:

On or about February 4, 2021, in the District of North Dakota, and elsewhere,

OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ;
JALEN HESTER, a/k/a DREAM; and
HOPE VICTORIA WELTON,

individually, and by aiding and abetting, knowingly and intentionally possessed with

intent to distribute a controlled substance, namely, approximately 470 pills that were a

mixture and substance containing a detectable amount of fentanyl, a Schedule II

controlled substance;

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C),

and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

The Grand Jury Further Finds Probable Cause That:

Upon the conviction of any of the offenses alleged in this Indictment, defendants

ROMEL RAMBUS, a/k/a BAGBOY MELL;
DEVONSHA DABNEY, a/k/a KEMELL, a/k/a MELLYVSMEL, a/k/a RELL;
KEMANI DABNEY, a/k/a KDD.EASTSIDE;
KESHAWN DABNEY, a/k/a BJ;
DIMOND HENDERSON, a/k/a DMAN;
ERVIN SAMPSON, a/k/a MIKE;
BRANDON SAMPSON;
JAMALE WHITE, a/k/a MELLY, a/k/a 5674MEL;
DEEANGELO TYRONE WHITE JR., a/k/a RELLY DEE, a/k/a DELO,
a/k/a DELO BAXK; and
OSAGYEFO NKRUMAH NAGBE, a/k/a 5656DJ,

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853;

Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); and Title 28, United

States Code, Section 2461, all right, title, and interest in any of the property constituting

or derived from proceeds obtained directly or indirectly as a result of the violations of

Title 18, United States Code, Section 1956(h), and Title 21, United States Code, Sections

841, 846, and 848, and any property used, or intended to be used, in any manner or part,

to commit, or to facilitate the commission of the said violation, and a sum of money equal

to the total amount of proceeds obtained as a result of the offenses, including, but not

limited to:

(1) Approximately $17,000 in cash seized on or about September 17, 2020;

(2) Approximately $7,500 in cash seized on or about November 15, 2020;

(3) Approximately $3,100 in cash seized on or about January 26, 2021; and

30

(4) a sum of money representing the amount of gross proceeds derived and

obtained as a result of the offenses alleged against each defendant in this

Indictment;

If any of the forfeitable property as a result of any act or omission of the

defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided

without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any other property of said

defendant up to the value of the forfeitable property;

All in accordance with Title 21, United States Code, Section 853, Title 18, United

States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461.

A TRUE BILL:


/s/ Foreperson
Foreperson

/s/ Drew H. Wrigley
DREW H. WRIGLEY
United States Attorney

DMD/vt